FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| STATE ANALYSIS, INC.<br>d/b/a STATESCAPE<br>114 N. Patrick Street<br>Alexandria, VA 22314<br><br>*Plaintiff,*<br><br>vs.<br><br>AMERICAN FINANCIAL SERVICES<br>    ASSOCIATION<br>919 18th Street, NW<br>Suite 300<br>Washington, DC 20006<br>    SERVE:<br>    Office of the Secretary of the Commonwealth<br>    Patrick Henry Building, 4th Floor<br>    1111 East Broad Street<br>    Richmond, Virginia 23219<br><br>KIMBELL SHERMAN ELLIS<br>1800 Diagonal Road<br>Suite 600<br>Alexandria, VA 22314,<br><br>*and*<br><br>LEIF B. JOHNSON<br>3718 Templeton Place<br>Alexandria, VA 22304-1387<br><br>*Defendants.* | Civil Action No. 1:08cv1333<br>LMB/TCB<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff State Analysis, Inc. d/b/a StateScape, by counsel and in support of its action for damages and injunctive relief against Defendants American Financial Services Association and Kimbell Sherman Ellis, hereby allege as follows:

## THE PARTIES

1.     Plaintiff State Analysis, Inc. d/b/a StateScape ("StateScape") is a Virginia corporation with its principal place of business at 114 N. Patrick Street, Alexandria, Virginia 22314.

2.     Defendant American Financial Services Association ("AFSA") is a District of Columbia corporation with its principal place of business at 919 - 18th Street, N.W., Suite 300, Washington, D.C. 20006.

3.     Defendant Kimbell Sherman Ellis, LLP ("KSE") is a Vermont limited liability partnership headquartered in Montpelier, Vermont with a principal place of business at 1800 Diagonal Road, Suite 600, Alexandria, Virginia 22314.

4.     Defendant Leif Johnson is, upon information and belief, a resident of the Commonwealth of Virginia, who transacted business in the Commonwealth of Virginia as part of his employment with StateScape.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); the Copyright Act, 17 U.S.C. § 501 *et seq.*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Title II of the Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.* The Court has supplemental jurisdiction over StateScape's remaining claims pursuant to 28 U.S.C. § 1367.

2

6.     This Court has personal jurisdiction over the Defendants because the activities complained of herein occurred within this district.

7.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## GENERAL ALLEGATIONS

8.     StateScape is a government relations information and analysis firm which offers its clients access to a comprehensive searchable proprietary database of local, state, and federal bills and regulations in real time at its website at www.statescape.com. StateScape sells access to its database on a subscription-basis, although a limited portion of its database is publically available without subscription. StateScape's proprietary database includes copies of legislation and regulations pending in the 50 states along with bill summaries and commentary authored by StateScape analysts. Each of the reports generated by the StateScape proprietary database bears a copyright notice. StateScape's database is updated on a daily basis. The StateScape database is hosted on a server located in StateScape's principal place of business in Alexandria, Virginia. StateScape's subscription-based services provide customers with database access and electronic tools enabling customers to search, collate and generate reports on legislative, regulatory, and local information. StateScape's subscription-based service also includes providing database products and analyses specially tailored to individual client needs. To control electronic access to the StateScape database and analysis tools, subscribers are provided with a confidential username and passcode.

9.     StateScape, the first firm to offer state legislative and regulatory tracking on the Internet – via its StateScape database commencing in 1996 – has been in business

3

since 1991. Since the current version of the StateScape database went online in 1999,
StateScape has created a unique database of state legislative and regulatory information
that provides it competitive advantage in its market space.

10.     Defendant AFSA is a business association whose members are financial
services businesses. According to its website, AFSA "is the national trade association for
the consumer credit industry, protecting access to credit and consumer choice. The
Association encourages and maintains ethical business practices and supports financial
education for consumers of all ages." (www.afsaonline.org/sitepages/factsheet.cfm).
AFSA offers six categories of membership, including Active Membership for consumer
credit and financing companies; Industrial Bank Membership for qualified industrial bank
or loan companies; Associate Membership for industry suppliers; Commercial
Membership for commercial finance companies; Affiliate Membership for national, state,
and/or local trade associations; and Foreign Membership for individuals, partnerships,
and corporations located and operating in countries outside the U.S. with businesses
similar to those operated by Active Members.

11.     StateScape has provided AFSA with access to the StateScape database
through a series of renewed one-year contracts since 1998, when StateScape bought the
Center for State Policy Research, an organization that previously had a long-term
contract with AFSA for similar work. Since 1998, AFSA members have enjoyed access
to the StateScape database as well as the information and custom reports authored by
StateScape. AFSA provided each member with a username and passcode which enabled
them to access the StateScape database through an AFSA website.

4

12.     To deliver services for its clients, including AFSA, StateScape developed proprietary software which accesses all state government websites each day and downloads information pertinent to legislative and regulatory matters of interest to StateScape's customers. StateScape's analysts then filter out extraneous bills and information by examining the text of each bill and determining whether the information would be useful to particular customers, including AFSA. As part of the database generation process, StateScape authors customized summaries of state legislation and regulatory initiatives. Database entries are then marked or "tagged" as being of interest to particular customers, including AFSA. In addition to creating the proprietary database, StateScape expends thousands of man-hours yearly combing through the results of its searches to generate lists of bills of interest to particular subscriber-customers. As part of its subscription contracts, AFSA also paid StateScape to provide specific services of unique interest to its members. On average over the course of its work for AFSA, StateScape employed 2.5 analysts fulltime, in addition to technical support and an account manager, to provide these AFSA-specific services.

13.     According to its website, KSE is a government relations and public affairs firm providing issues management, legislative and regulatory monitoring, lobbyist services and crisis communications for its national, regional and local clients. (www.kse50.com). On information and belief, KSE is also affiliated with the law firm of Kimbell Storrow Buckley Hughes, LLP ("Kimbell Storrow"). According to the KSE and Kimbell Storrow websites, Charles Storrow is both a partner of Kimbell Storrow and the managing partner of KSE.

5

14.     Between on or about March 1, 1999 and February 29, 2000, KSE was a customer of StateScape. KSE and StateScape's relationship was governed by a contract containing terms which, among other things, prohibited KSE from furnishing third persons with any KSE password or other access to StateScape's subscription-based services. Since conclusion of that contract, KSE has not been a customer of StateScape, and has never been provided a username and passcode to receive access to the proprietary StateScape database.

15.     In or around December 2002, KSE approached StateScape about purchasing the StateScape business, including its database system. At that time, StateScape's marketing director was Leif Johnson. It was Leif Johnson who introduced KSE to his employer StateScape. KSE offered StateScape $100,000 for its database system. Judging the proposal inadequate, StateScape declined KSE's offer.

16.     On March 19, 2003, StateScape terminated Leif Johnson because of his poor performance. Mr. Johnson was subject to the terms and prohibitions of both a Non-Compete Agreement dated October 30, 2001 and an Employee Non-Disclosure and Assignment Agreement ("Non-Disclosure Agreement"), dated October 30, 2001. Pursuant to the terms of the Non-Compete Agreement, he was prohibited for one year from the date of his termination from, among other things, performing for any other entity any service similar to the services performed by him for StateScape, and from performing such similar services for any StateScape customer. In addition, pursuant to the terms of the Non-Disclosure Agreement, Mr. Johnson was forever prohibited from benefiting from or disclosing to any person not an authorized employee or representative of StateScape, StateScape's proprietary and confidential information.

17.     Despite his obligations under the Non-Compete and Non-Disclosure

Agreements, shortly after his termination by StateScape, Mr. Johnson commenced work

for KSE.  As reported in the July 2003 issue of *Business People-Vermont*:

> To better gain access to the national headquarters of trade
> associations[,] the most likely customers for Focus[,] KSE
> recently opened a Washington, D.C. office.  The firm had
> first considered buying one of its competitors in the
> tracking business, going so far as to seek the help of an
> investment banker.  "We decided we just didn't want to
> buy his business," says Sherman with a chuckle, "but just
> steal his marketing director, which we did."  That would be
> Leif Johnson, who staffs the Washington office.

www.vermontguides.com/2003/7-july/kse.htm.  Thus, on information and belief,

commencing no later than in or about July 2003, Mr. Johnson performed, and continues

to perform, work for KSE – a direct competitor of StateScape – on matters similar to

those he worked on for StateScape.

18.     Further, on August 13, 2003, StateScape researcher Gia Biden, left

Statescape, and sometime thereafter moved to Vermont.  There she eventually went to

work for KSE.  Gia Biden was obligated to identical terms of non-competition and non-

disclosure as Johnson, pursuant to a Non-Compete Agreement with StateScape dated

December 11, 2002, and a Non-Disclosure Agreement with StateScape dated December

11, 2002.  While employed for StateScape, Gia Biden performed research services for the

StateScape-AFSA contract.  KSE's website currently lists Gia Biden as a member of

"The KSE Focus Tracking Team."

19.     On or about October 23, 2008, after over 11 years of contracting with

StateScape, AFSA informed StateScape that they would be terminating their subscription

to the StateScape database and switching to KSE's FOCUS tracking database

7

commencing January 1, 2009. This termination came as a surprise to StateScape because AFSA had never complained to StateScape about its services or its cost structure.

20.     Shortly thereafter, StateScape undertook an internal investigation of AFSA's activity logs into the StateScape database, where StateScape discovered numerous downloads of StateScape's entire database of AFSA bills and regulations. A closer look at this activity by StateScape revealed that the StateScape proprietary database had been accessed seven hundred thirty-five (735) times over the past four and one-half years from Internet Protocol (IP) address 209.198,110.194, registered to the Montpelier Community Internet Cooperative ("Vermont IP Address") using AFSA passwords assigned to executives of AFSA.  Specifically, upon information and belief, the StateScape database was accessed from Montpelier, Vermont, with the user name kgouda@afsamail.org from October 12, 2004 to March 27, 2006 (381 database accesses), and with the username dfagre@afsamail.org or asiles@afsamail.org from April 17, 2006 to November 11, 2008 (354 database accesses).  StateScape database records show that the users accessing the database from Montpelier, Vermont accessed a total of 190,649 proprietary database records between October 12, 2004 through November 11, 2008.

21.     These discoveries led StateScape to visit AFSA's website via the Internet to see if KSE was listed as an AFSA member.  At the AFSA website, StateScape discovered white papers published on the site that were prepared for AFSA by KSE containing bill summaries markedly similar, if not identical, to those authored by StateScape. The specialized topics, organization of content, and even sentence structure and use of language was substantially similar and/or identical across a volume of these summaries.  In addition, in at least two of the KSE white papers reviewed to date, the

8

"bill counts" listed - the number of bills that were reported to exist on a particular topic - matched the bill counts for subjects that were searched by KSE on the StateScape database, even though these counts were the results of StateScape customized searches involving the judgment of the particular StateScape analyst. The "KSE-prepared" white papers date back to 2004. StateScape also visited KSE's website and discovered that many features of StateScape's proprietary database appeared on KSE's FOCUS database, including a mapping feature button named "MAP It," even though KSE was never authorized to access the proprietary portions of StateScape's database where such features appear.

22.     StateScape's investigation also uncovered one database registration from the same IP address with the user name jhughes@kse50.com (209.198.110.194). This user name is the e-mail address for Jacqueline Hughes, a practicing attorney and lobbyist at KSE and Kimbell Storrow. (www.kse50.com/frameset.php?contentPage=aboutus.php and www.kimbell-storrow.com/hughes.php).

23.     On information and belief, the e-mail address kgouda@afsamail.org was assigned to Ms. Kara Gouda, the e-mail address dfagre@afsamail.org was assigned to Ms. Danielle Fagre, and the e-mail address asiles@afsamail.org was assigned to Ms. Ale Siles, who were each AFSA employees in the AFSA Washington DC office.

24.     On information and belief, KSE repeatedly accessed the StateScape proprietary database from October 12, 2004 through November 11, 2008 without authorization, using username and passcodes provided to them by AFSA or an employee of AFSA, and copied StateScape database records, including copyrighted works of authorship. Based upon the information that: (1) documents posted on the KSE website

appear to be copies of StateScape copyrighted works of authorship which are only available on the StateScape proprietary database; (2) the information that the StateScape database was repeatedly accessed from a Montpelier, Vermont IP address using usernames and passcodes assigned to AFSA individuals who work in Washington DC; (3) that KSE is located in Montpelier, Vermont; (4) the usernames used to access the StateScape database from Montpelier Vermont, were patently those of AFSA employees (e.g., kgouda@afsamail.org); and (5) the information that at least one KSE attorney had logged into the database using her own e-mail address username, on information and belief, the user(s) of the misappropriated AFSA usernames and passcodes knew or should have known that such use was improper.

25.     Pursuant to the StateScape-AFSA Agreement, AFSA was prohibited from sharing StateScape's subscription services beyond its own subscribing members. In particular, that agreement states that "no other person, firm, association, corporation or other entity is entitled to use the Services performed on behalf of AFSA except as provided for in Attachment A, including, but not limited to, a password or other access to computer or computer-related Services." (Exhibit 1). Nothing in Attachment A gives or gave AFSA authority to furnish non-members, particularly a direct competitor like KSE, with AFSA passwords to access StateScape's service or otherwise to provide KSE access to StateScape's subscription-based services.

26.     Further, KSE is not listed among AFSA's current List of Active Members. On information and belief, KSE has never been an Active Member of AFSA, and KSE has never held any kind of membership in AFSA.

27.    In or around November 13, 2008, upon the discovery of this unauthorized access, StateScape deactivated AFSA's passcodes, temporarily blocking access to the proprietary database.  At the same time, StateScape reminded AFSA of its obligations not to share its passwords and user names with unauthorized persons.  In addition, StateScape blocked access to its proprietary database by any party from the Vermont IP Address.  On November 20, 2008, AFSA responded that it would not share its StateScape access information with anyone who is not a member of the AFSA staff.  While further investigating the scope and depth of the unauthorized access, StateScape re-activated the passcodes to AFSA based on AFSA's response.  However, StateScape then continued and still maintains the block on the Vermont IP Address.

28.    StateScape is continuing its investigation into the scope and depth of the unauthorized access to its proprietary information and database, and reserves the right to supplement this Complaint upon completion of its investigation.

### COUNT ONE:
### (Claim Against AFSA and KSE for
### Violations of the Copyright Act)

29.    StateScape repeats and realleges the allegations contained in paragraphs 1 through 28 of this Complaint with the same force and effect as if set forth fully herein.

30.    StateScape owns a copyright in the StateScape proprietary database in the organization of the information in a searchable format available in no other source.  In particular, on or about December 19, 2008, StateScape properly filed with the U.S. Copyright Office a registration application for its proprietary database, paid the U.S. Copyright Office the required fee, and deposited the work in question.  StateScape also owns copyrights in each of the bill summaries within the StateScape database that were

original works of authorship.  When displayed or printed, these summaries and other reports of StateScape bear notices of StateScape's copyright protection in the works.  On or about December 12, 2008, StateScape properly filed with the U.S. Copyright Office a registration application for fourteen (14) representative summaries, which are original works of authorship.  At the same time, StateScape paid the U.S. Copyright Office the required application fee, and deposited these works in question.  These deposited works were included in the database that were incorporated in "KSE-prepared" white papers without authorization.

31.     AFSA and KSE have violated U.S. Copyright law 17 U.S.C. § 501 by: (a) reproducing StateScape copyrighted works in copies; and (b) preparing derivative works based upon StateScape copyrighted work without authorization from StateScape.

32.     AFSA and KSE's infringement of StateScape copyrights was willful and for purposes of commercial advantage or private financial gain.

33.     StateScape has suffered damage and by reason of these violations is entitled to damages, injunctive relief and other equitable relief as provided by 17 U.S.C. §§ 502-505.

**COUNT TWO:**
**(Claim Against AFSA and KSE for**
**Violations of the Computer Fraud and Abuse Act)**

34.     StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein.

35.     On multiple occasions during the time period October 12, 2004 to November 11, 2008, AFSA and KSE violated 18 U.S.C. § 1030(a)(2) by intentionally accessing, without authorization, the StateScape database server which is a computer

exceeding authorized access to such computer, and thereby obtaining information from such computer by conduct  involving interstate communication.

36.     AFSA and KSE have violated 18 U.S.C. § 1030(a)(6) by knowingly and with an intent to defraud, and in a manner that affects interstate commerce, trafficking in passcodes and access codes through which StateScape's database computer may be accessed without authorization.

37.     StateScape has suffered damage and by reason of these violations and is entitled to damages, injunctive relief and other equitable relief as provided by 18 U.S.C. § 1030(g).

**COUNT THREE:**
**(Claim Against AFSA and KSE for**
**Violations of Title II of the Electronic Communications Privacy Act)**

38.     StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein.

39.     AFSA and KSE have violated Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 *et seq.*, by: (a) intentionally accessing without authorization, or by intentionally exceeding an authorization to access, the passcode-protected areas of StateScape's database; (b) obtaining access to electronic communications while such communications were in electronic storage in that database; (c) disclosing such communications to third parties not authorized to receive them by publishing them on the AFSA website and other media; and (d) conspiring, encouraging, aiding, abetting, and participating in efforts to do so.

40.     StateScape has been irreparably damaged by AFSA and KSE's violations of Title II of the Electronic Communications Privacy Act, and is entitled to damages, injunctive relief, and attorney's fees and costs pursuant to 18 U.S.C. § 2707.

## COUNT FOUR:
### (Claim Against AFSA and KSE for
### Violations of the Virginia Computer Crimes Act)

41.     StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein.

42.     AFSA and KSE have used a computer or computer network, without authority, and obtained property by false pretenses, embezzled or committed larceny, and/or converted the property of StateScape in violation of the Virginia Computer Crimes Act, Va. Code Ann. § 18.2-152.3 *et seq.* Pursuant to Va. Code Ann. § 18.2-152.12, StateScape is entitled to recover damages sustained by reason of StateScape's violations of the Virginia Computer Crimes Act and the costs of suit.

43.     As a direct and proximate result of AFSA and KSE's violations of the Virginia Computer Crimes Act, StateScape has sustained and will sustain substantial damages and has been and will be irreparably harmed.

## COUNT FIVE:
### (Claim Against AFSA for
### Breach of Contract)

44.     StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein.

45.     StateScape and AFSA entered into a valid and enforceable agreement, under which StateScape provided subscriber-based Internet access to its database by AFSA; StateScape provided a confidential passcode to AFSA; AFSA agreed that no other

person or entity was entitled to use the services performed by StateScape on behalf of AFSA; and AFSA agreed not to permit any person or entity other than AFSA to access the site or to use the passcode to access the site for anyone else.

46.     AFSA breached the agreement with StateScape by providing AFSA user names and passcodes to multiple non-AFSA persons and permitting those unauthorized persons to use those user names and passcodes to access the StateScape subscriber-based proprietary system for purposes substantially in excess of the uses set forth in the AFSA-StateScape Agreement.

47.     As a direct result of AFSA's breach of its agreement with StateScape, StateScape has suffered, and continues to suffer, direct and consequential damages.

## COUNT SIX
### (Claim Against KSE for Trespass)

48.     StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein.

49.     StateScape maintains passcode-protected areas on its Internet website.

50.     KSE, without permission from StateScape, willfully and maliciously entered upon StateScape's website without authorization.

51.     As a direct and proximate result of KSE's conduct, the value of StateScape's proprietary product to AFSA and other third parties has been diminished.

52.     KSE's actions have caused StateScape irreparable damages.

## COUNT SEVEN:
### (Claim Against KSE for Unjust Enrichment)

53.     StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein.

54.    KSE derived benefit, including commercial advantage and private financial gain, from StateScape's proprietary database.

55.    KSE was fully aware of StateScape as the source of the information which KSE claimed to author and, which KSE used to post articles, white papers, and other information on the AFSA website for use by AFSA members and the public.

56.    Despite knowing that StateScape was the author, developer, and source of the information it allowed to be posted under the KSE name on the AFSA Internet website, KSE continued to benefit from StateScape's time, money, and resources expended to create the StateScape database; and KSE acted in such a manner without any permission, authorization, attribution or compensation for the value of StateScape's work.  Thus, KSE accepted and retained the benefit of StateScape's work in circumstances that render it inequitable for KSE to retain the benefit without paying for the value of StateScape's work.

## COUNT EIGHT:
### (Claim Against KSE for Interference with Prospective Business Relations)

57.    StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein.

58.    StateScape and AFSA entered into a valid and enforceable agreement, which by its terms was renewable annually, unless one of the parties otherwise noticed the other in writing.

59.    KSE was fully aware of the ongoing and renewable AFSA-StateScape agreement.

60.    KSE intentionally and maliciously interfered with the AFSA-StateScape agreement by, among other things, obtaining, without permission or compensation,

StateScape's proprietary database and original works of authorship and using such information to place articles, papers, and other information on AFSA's website for the benefit of AFSA.

61.     KSE used the information improperly obtained from the StateScape database to compete against StateScape for the AFSA contract, and as a result of KSE's unauthorized and illegal conduct, AFSA notified StateScape in October 2008 that it would not be renewing the agreement after an 11-year relationship.

62.     As a direct and proximate cause of KSE's conduct, StateScape has suffered and will continue to suffer damages.

### COUNT NINE:
### (Claim Against KSE for Interference with Contract)

63.     StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein. StateScape and AFSA entered into a valid and enforceable agreement.

64.     KSE was fully aware of the confidential nature of the passwords and subscriber-based content provided AFSA by StateScape.

65.     KSE intentionally and maliciously interfered with the AFSA-StateScape agreement by, among other things, obtaining, without permission or compensation, StateScape's proprietary database and original works of authorship and using such information to place articles, papers, and other information on AFSA's website.

66.     As a result of KSE's unauthorized and illegal conduct, KSE caused AFSA to breach the terms of the AFSA-StateScape Agreement.

67.     As a direct and proximate cause of KSE's conduct, StateScape has suffered and will continue to suffer damages.

17

## COUNT TEN:
### (Claim Against AFSA and KSE for Misappropriation of Trade Secrets Under Virginia Uniform Trade Secrets Act)

68.     StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein.

69.     Under the AFSA-StateScape Agreement, only AFSA was to use the passcodes provided by StateScape, which were confidential and proprietary information that constitute trade secrets of StateScape as defined in the Virginia Unifrorm Trade Secrets Act, Va. Code Ann. § 59.1-336 *et seq.*

70.     Those passcodes were items of independent economic value. The confidential passcodes' value is derived from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from disclosure or use of the passcodes or from using the database to which the passcodes provide access.

71.     At all relevant times, StateScape took reasonable measures to keep such information secret.

72.     Without authorization from StateScape, KSE misappropriated at least three AFSA passcodes and used them for the benefit of themselves. KSE's misappropriation was willful, without legal justification, and without StateScape's permission or consent.

73.     As a direct and proximate result of AFSA's and KSE's misappropriation of trade secrets, StateScape has sustained and will sustain substantial damages and has been and will be irreparably harmed.

## COUNT ELEVEN:
### (Claim Against Leif Johnson for Breach of Contract)

74.     StateScape repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint with the same force and effect as if set forth fully herein.

75.     Pursuant to the terms of the his Non-Compete Agreement with StateScape, Leif Johnson was prohibited for one year from the date of his termination of employment with StateScape from, among other things, performing for any other entity any service similar to the services performed by him for StateScape, and from performing such similar services for any StateScape customer.

76.     Despite the terms and prohibitions stated in his Non-Compete Agreement with StateScape, prior to the expiration of one year from his last date of employment with StateScape, Leif Johnson commenced work for Defendant KSE, a direct competitor of StateScape.  Further, prior to the expiration of one year from his last date of employment with StateScape, Leif Johnson commenced work for Defendant KSE, performing services for AFSA, StateScape's existing customer.

77.     Leif Johnson breached the terms of his Non-Compete Agreement with StateScape by, among other things, commencing employment with KSE.

78.     As a direct result of Leif Johnson's breach of his Non-Compete Agreement with StateScape, StateScape has suffered, and continues to suffer, direct and consequential damages.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff StateScape demands judgment in its favor and against Defendants as follows:

(a)   That Defendants AFSA and KSE, jointly and severally, be required to pay damages (such damages to include lost profits or KSE's profits where appropriate) in an amount to be determined at trial, including without limitation treble damages, punitive damages, and exemplary damages, for: (a) violations of U.S. Copyright law, 17 U.S.C. § 501; (b) violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030; (c) violations of Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 *et seq.*; (d) violations of the Virginia Computer Crimes Act, § 18.2-152.3 *et seq.*, and (e) violations of the Virginia Uniform Trade Secrets Act, § 59.1-336 *et seq.*;

(b)   That Defendant AFSA be required to pay StateScape its direct and consequential damages, in an amount to be determined at trial, incurred as the result of AFSA's breach of its agreement with StateScape;

(c)   That Defendant KSE be required to pay StateScape its direct and consequential damages, in an amount to be determined at trial, incurred as the result of KSE's trespass, unjust enrichment, interference with prospective business relations, and interference with contract;

(d)   Enjoin AFSA and KSE from using any confidential and proprietary information of StateScape;

(e)   That Defendants AFSA and KSE be required to pay StateScape's attorneys' fees and other costs of this action;

(f)   That Defendant Leif Johnson be required to account for and pay over to StateScape (i) all compensation, profits, monies, accruals, increments or

other benefits derived or received by him as the result of all transactions constituting a breach of his Non-Compete Agreement with StateScape; (ii) any liquidated damages to which StateScape is entitled to under the Non-Compete Agreement; (iii) any equitable relief determined as appropriate and necessary, including but not limited to, enjoining him from employment, service, soliciting, or other conduct prohibited by the Non-Compete Agreement; and (iv) all StateScape's attorney's fees, court costs, and expenses incurred as a result of enforcing the Non-Compete against him;

(g)     For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable in this action.

Dated: December 23, 2008          Respectfully submitted,


_Shauna M. Wertheim_
John F. Mardula (Va. Bar. No. 15606)
Shauna M. Wertheim (Va. Bar No. 33690)
THE MARBURY LAW GROUP, PLLC
(formerly known as Roberts Mardula &
      Wertheim, LLC)
11800 Sunrise Valley Drive, Suite 1000
Reston, Virginia 20191
Telephone:  (703) 391-2900
Facsimile:  (703) 391-2901
jmardula@globe-ip.com
swertheim@globe-ip.com
*Attorneys for Plaintiff State Analysis, Inc.*
*d/b/a StateScape*

21